UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DANIEL C. STOVALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00144-JPH-MG |
| | ) | |
| BYRD, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Daniel Stovall alleges that Defendant Dr. Samuel Byrd violated his Eighth Amendment rights by failing to provide adequate medical care for his tooth abscess. Dkt. 47. Dr. Byrd has moved for summary judgment. Dkt. [63]. For the reasons explained below, the Court **GRANTS** Dr. Byrd's motion.

## I.
## Summary Judgment Standard of Review

A motion for summary judgment asks the Court to find that trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because the Defendant has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Stovall and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

At all times relevant to this lawsuit, Mr. Stovall was incarcerated at Wabash Valley Correctional Facility. Dr. Byrd worked as a physician at Wabash Valley and has been licensed to practice medicine in Indiana since 2004. Dkt. 63-1 ¶ 3 (Byrd Aff.).

On January 28, 2024, Mr. Stovall submitted a healthcare request form to the dentist due to severe pain and swelling in the left side of his face and neck. Dkt. 63-2 at 1 (Stovall Medical Records). On January 30, a nurse assessed Mr.

Stovall and noted slight swelling to the area. *Id.* at 1–3. She took Mr. Stovall's vital signs and examined his mouth, noting that he had swollen gums and that the condition of his teeth was poor. *Id.* She followed the dental protocol and provided Mr. Stovall with the antibiotic Amoxicillin and Ibuprofen and referred Mr. Stovall to see the dentist. *Id.*

On February 2, Mr. Stovall saw the dentist, Dr. Vance. *Id.* at 5. Mr. Stovall complained about headaches and pain in his left ear, lower jaw, and lower molars. *Id.* Dr. Vance did not note any intraoral or extraoral swelling. *Id.* She noted that she did not see any evidence of decay, fracturing, or swelling in the left side of Mr. Stovall's mouth, although he was "very tender around submandibular lymph nodes extraorally." *Id.* X-rays revealed that Mr. Stovall's left lower molars were within normal limits. *Id.* Dr. Vance therefore noted that "[t]here does not appear to be any dental issues in this area at this time that would cause patient's symptoms." *Id.* After Mr. Stovall's February 2 dental appointment, Dr. Vance referred him "to medical for consult," *id.*, and emailed Dr. Byrd with her findings. Dkt. 63-3 at 1.

Mr. Stovall submitted a request for medical care, complaining about ongoing severe pain and claiming that the prescribed medications were not working. Dkt. 63-2 at 1.[1] On February 6, nursing staff consulted with Dr. Byrd, who before examining Mr. Stovall ordered an x-ray of Mr. Stovall's sinuses, including his facial bones and jaw. Dkt. 63-1 ¶ 9. Mr. Stovall "had already been

---

[1] The form is dated January 3, 2024, but it references Mr. Stovall's request for dental care on January 28, his appointment with the nurse on January 30, and his appointment with the dentist on February 2.

placed on Amoxicillin, an antibiotic, for possible infection, and ibuprofen for pain." *Id.*

Following the x-ray on February 7, the radiologist prepared a report that stated:

> Indication: Dental abscess. Left facial swelling and pain.
>
> PA, Waters, and lateral views of the paranasal sinuses fail to demonstrate abnormality. No mucosal thickening, air-fluid level or polypoid lesion is seen.
>
> Impression
>
> Paranasal sinuses appear within normal limits

Dkt. 63-2 at 8.[2]

The next day, Mr. Stovall submitted a request for healthcare form stating that he wanted to review the x-rays. *Id.* at 9. A nurse responded on February 10 that he was scheduled to see the doctor. *Id.* That same day, the nurse reviewed the x-ray results with Mr. Stovall and assessed his complaints about ongoing face, jaw, and eye pain. *Id.* at 11. She noted that Mr. Stovall had been seen by the dentist, who did not find any dental issues that could have been the source of the pain and swelling. *Id.* The nurse noted swelling on Mr. Stovall's left side and updated Dr. Byrd on Mr. Stovall's condition. *Id.* at 11; dkt. 63-1 ¶ 11.

On February 13, Dr. Byrd examined Mr. Stovall, who complained about headaches, jaw pain, and ear pain. Dkt. 63-1 ¶ 12. Dr. Byrd ordered blood work

---

[2] It appears from the radiologist's report that the "Indication: Dental abscess" refers to the reason the x-ray was ordered, rather than the "Impression" or results from the test. Mr. Stovall nevertheless argues—with no designated evidence in support—that Dr. Byrd knew that the x-ray showed that he had an abscessed tooth. Dkt. 67 at 1. The Court need not resolve this question because Dr. Byrd is regardless entitled to summary judgment.

to check for infections and signs of vasculitis. *Id.*; dkt. 63-2 at 12.[3] Dr. Byrd sent a follow-up email to nursing staff, requesting that the blood work be done immediately. *Id.*; dkt. 63-3 at 2. Mr. Stovall's blood was drawn on February 14. Dkt. 63-2 at 12. The results were normal. *Id.* at 37–38; dkt. 63-1 ¶ 14. Mr. Stovall was then referred back to the dentist and Mr. Stovall was given a supply of Ibuprofen. Dkt. 63-1 ¶¶ 14-15; dkt. 63-2 at 31.

Mr. Stovall submitted requests for medical care on March 6, March 10, March 11, and March 15, complaining about severe pain and lack of treatment. Dkt. 63-2 at 13–17. Each time, the nurses responded that Mr. Stovall was on the list to be seen by the dentist. *Id.* On March 14, Mr. Stovall was given Ibuprofen and antibiotics again. *Id.* at 14. On March 18, Mr. Stovall had an appointment with the dentist, Dr. Middaugh. Dkt. 63-1 ¶ 16; dkt. 63-2 at 31–32. Dr. Middaugh diagnosed Mr. Stovall with an infected tooth, prescribed a stronger antibiotic and Ibuprofen, and scheduled him for an extraction on April 11. Dkt. 63-1 ¶ 16.

On March 25, Mr. Stovall submitted another request for healthcare, complaining about ongoing pain and weight loss and stating that the Ibuprofen was not providing relief. Dkt. 63-2 at 18. The nurse responded that the dentist saw him on March 18 and he will be seen for an extraction. *Id.* On April 2, Dr. Middaugh prescribed Ibuprofen and the stronger antibiotic. *Id.* at 33–34. On

---

[3] There is no medical record of this visit in the designated evidence. Dr. Byrd testified that he must have forgotten to enter the record of the visit into Mr. Stovall's Electronic Medical Record. Dkt. 63-1 ¶ 12.

April 11, Dr. Middaugh performed the extraction and gave Mr. Stovall Ibuprofen for pain. *Id.* at 19–20, 35.

Dr. Byrd designates evidence that he had no control over the dentists' availability at Wabash Valley. Dkt. 63-1 ¶ 18. When patients had dental issues, medical staff referred them to the dentist, and they were scheduled based on the severity of their dental issues. *Id.* Dr. Byrd relied on the dentists' assessments of patients' dental issues, so he relied on Dr. Vance's assessment that Mr. Stovall did not have dental issues during the February 2 visit. *Id.* ¶ 19. Dr. Byrd could not extract Mr. Stovall's tooth himself because he is not a dentist. *Id.* ¶ 20. Dr. Byrd did not send Mr. Stovall to the emergency room because an infected, painful tooth is not a medical emergency and delaying treatment until he could be seen by a dentist did not present risk to Mr. Stovall's health. *Id.* ¶ 21.

Mr. Stovall is proceeding on an Eighth Amendment medical-care claim against Dr. Byrd. Dkt. 47 (screening order). Dr. Byrd moved for summary judgment. Dkt. 63.

## III. Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need."

*Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). To prevail on such a claim, "a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021).

Dr. Byrd does not dispute that Mr. Stovall's medical condition was objectively serious. Instead, Dr. Byrd argues, under the subjective element, that no reasonable jury could infer from the designated evidence that he was deliberately indifferent to Mr. Stovall's medical needs. Dkt. 64 at 11. Mr. Stovall did not designate any admissible evidence to dispute Dr. Byrd's version of events. Dkt. 67. Instead, Mr. Stovall responds that Dr. Byrd knew that he had a tooth abscess and failed to respond appropriately to the medical emergency. *Id.* at 3–4.

For Mr. Stovall to avoid summary judgment, the record must allow a reasonable jury to conclude that Dr. Byrd "consciously disregarded a serious risk to [Mr. Stovall]'s health." *Dean v. Wexford Health Servs.*, 18 F.4th 214, 241 (7th Cir. 2021). Because medical professionals rarely admit that they consciously disregarded a prisoner's serious medical condition, "deliberate indifference must be inferred from the propriety of their actions." *Id.* Medical professionals may be found to be deliberately indifferent if they persist in an ineffective course of treatment, refuse to take instructions from a specialist, render a treatment decision that departs from accepted professional judgment, or cause an unreasonable delay in providing treatment. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). Courts generally must "defer to medical professionals' treatment

decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Here, there is no designated evidence allowing a reasonable jury to find that Dr. Byrd departed substantially from accepted practices or refused to take instructions from a specialist. Instead, the designated evidence shows that when Dr. Byrd was first notified about Mr. Stovall's complaints on February 2, he relied on the specialist's opinion from Dr. Vance, Wabash Valley's dentist, that there was nothing wrong with Mr. Stovall's teeth. Dkt. 63-1 ¶¶ 9, 18. Dr. Byrd then ordered x-rays of Mr. Stovall's facial bones, before seeing him in person, to determine non-dental causes of the pain. *Id.* The report from the February 7 x-ray informed Dr. Byrd that Mr. Stovall's "[p]aranasal sinuses appear within normal limits." Dkt. 63-2 at 8; 63-1 at 2 ¶ 10. When Dr. Byrd examined Mr. Stovall on February 13, 2024, his "primary complaint was headaches, jaw pain, and ear pain." 63-1 at 2 ¶ 12.

After this appointment, Dr. Byrd ordered blood work to obtain "more information on any systemic issues that were going on, including possible infection." Dkt. 63-1 ¶ 12. The results from the lab work "were completely normal, showing no sign of infection or medical issue that required treatment." *Id.* ¶ 14. Mr. Stovall continued to experience dental/facial pain, so medical staff referred him back to the dentist and provided him a supply of Ibuprofen. *Id.* ¶ 15.

While there was a gap between Dr. Byrd's examination of Mr. Stovall and when Dr. Byrd referred him back to the dentist, that does not show deliberate indifference. The designated evidence shows that Dr. Byrd took reasonable steps to diagnose the source of Mr. Stovall's pain and provide him with medical care. Although Mr. Stovall experienced severe pain during this time, he has not designated evidence that the wait worsened his condition. *See Barnes v. Wexford Health Sources, Inc.*, 177 F.4th 825, 833 (7th Cir. 2026) (In cases "where the plaintiff alleges the defendant delayed, rather than denied, medical treatment—we have required that the plaintiff present 'verifying medical evidence' that the delay, and not the underlying condition, caused some harm." *Id.* (quoting *Walker*, 940 F.3d at 964); *Arce v. Wexford Health Sources, Inc.*, 75 F.4th 673, 681 (7th Cir. 2023) ("[T]he Eighth Amendment does not . . . impose the unrealistic requirement that doctors keep patients completely pain-free.").

Even if Mr. Stovall had designated evidence that his condition worsened, conducting additional diagnostic testing to rule out medical issues before referral back to the dentist cannot support a finding of deliberate indifference. *See* dkt. 63-1 ¶ 12 (explaining the additional tests and the medical conditions Dr. Byrd was looking for "as a possible cause of [Mr. Stovall's] symptoms"); *see Barnes*, 177 F.4th at 832 ("Where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference."). For these same reasons, Dr. Byrd was not deliberately indifferent even if the x-ray showed that Mr. Stovall may have had a dental abscess on February 7. The undisputed designated evidence shows that Dr. Byrd had not yet ruled out potential non-

dental reasons for Mr. Stovall's symptoms, so it was not deliberately indifferent to conduct additional tests in his medical judgment before referring Mr. Stovall back to the dentist. *See Barnes*, 177 F.4th at 832–33.

After referring Mr. Stovall back to the dentist, Dr. Byrd did not have any control over when that dentist's appointment was scheduled or when Mr. Stovall was seen. Dkt. 63-1 ¶ 18. In the meantime, medical staff refilled the prescription for antibiotics and supplied Mr. Stovall with Ibuprofen. Dkt. 63-2 at 14, 31. Similarly, after Dr. Middaugh diagnosed Mr. Stovall with a tooth infection and scheduled an extraction, Dr. Byrd did not have any control over when the extraction would be performed, and the uncontested designated evidence is that he could not extract the tooth himself. Dkt. 63-1 ¶ 18, 20.

Mr. Stovall nevertheless argues that Dr. Byrd could have sent him to the emergency room for an emergency extraction. Dkt. 67 at 4. But Mr. Stovall has not designated any evidence that his tooth abscess was a medical emergency or that the delay worsened his condition. Dkt. 68 at 1; *see Barnes*, 177 F.4th at 833 (A plaintiff "cannot prove deliberate indifference on the grounds that he wanted [the doctor] to take some other course of action than he took so long as the action was based on medical judgment.").

While he suffered pain and swelling, Mr. Stovall has not designated evidence that he exhibited symptoms of a severe infection or another condition that should have prompted Dr. Byrd to send Mr. Stovall to the emergency room. The designated evidence therefore does not allow a reasonable jury to determine that Dr. Byrd's decision not to treat the infection as an emergency departed

substantially from accepted professional judgment or caused an inexplicable delay in treatment. *See Barnes*, 177 F.4th at 833. Indeed, the dentist—the relevant specialist for Mr. Stovall's diagnosis—similarly did not send Mr. Stovall to the emergency room on March 18.

In sum, the designated evidence shows that Dr. Byrd responded to Mr. Stovall's complaints by ordering diagnostic tests, antibiotics, and pain medication, and referring Mr. Stovall back to the dentist. Although Mr. Stovall continued to have pain, "[e]vidence demonstrating the defendant reasonably responded to the risk, even if unsuccessfully preventing the harm, 'negates an assertion of deliberate indifference.'" *Barnes*, 177 F.4th at 833 (quoting *Reck v. Wexford Health Sources*, Inc., 27 F.4th 473, 483 (7th Cir. 2022)). Accordingly, no reasonable jury could find that Dr. Byrd was deliberately indifferent, so Dr. Byrd is entitled to summary judgment.

## IV.
## Conclusion

Dr. Byrd's motion for summary judgment, dkt. [63], is **GRANTED**. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 8/27/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DANIEL C. STOVALL 961380
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Jeffrey Nicholas Harkey
Sandberg Phoenix & von Gontard
jharkey@sandbergphoenix.com

Timothy Charles Sansone
Sandberg Phoenix & von Gontard
tsansone@sandbergphoenix.com